many other cases; and further, to direct the prosecution. if any have been instituted, for the recovery thereof, to cease and be discontinued. on such terms as he may deem reasonable; and the third section provides that nothing in the said act shall be so construed as to affect the right of any person to that part of any penalty or forfeiture, which he may be entitled to, by virtue of the said laws, in cases where the prosecution has been commenced, or information given before the passing of that act, or any other act, relative to the mitigation or remission of such penalties and forfeitures. From this it is apparent that congress considered this proviso necessary to save the inchoate right of individuals, which had previously accrued, from the effect which a treasury remission would otherwise have had upon them.

It certainly does not follow from this that the pardoning power of the president extends to the barring of private inchoate interests; because he derives his prerogative to pardon under the constitution, and its extent must be tested by that instrument. Those of the secretary of the treasury arise out of legislative provisions; and in respect to the rights of collectors and others to a part of the penalties, cujus est dare, ejus est disponere. Without, then. giving any opinion as to the power of the president to remit, and thus to defeat the inchoate rights of individuals to penalties and forfeitures, and admitting, for the present, that he possesses such a power, I proceed to inquire whether he has in fact exercised it in the present instance. The instrument which grants the pardon, after reciting that proceedings are still pending against Lancaster. on the bond given for the appraised value of the vessel, proceeds to remit all the interest of the United States in, and claim to, the penalty or forfeiture. so far forth as it concerns the said Lancaster. Now what was the interest and claim of the United States in and to this penalty? Clearly, to no more than a moiety. The eighty-ninth and ninety-first sections of the duty law (2 Bior. & D. Laws, c. 128 [1 Stat. 695]), to which the embargo law refers, directs the collector to receive from the court or officer the sum recovered, and to pay one moiety of what may remain, after charges deducted, into the treasury, for the benefit of the United States. and to distribute the balance amongst certain officers of the customs, where there is no other informer. It is true that the rights of those officers to the other moiety are inchoate until judgment; but still the United States never had, for a moment, an interest in, or claim to that moiety; and consequently a remission of it cannot by fair construction be included under expressions applicable only to the interest and claim of the United States. If the president. willing to release the claim of the United States, was, nevertheless, indisposed to extend his mercy to the injury of private interest. I am at a loss to conceive in what more appropriate language he could have expressed such his will. It is true that he directs all further proceedings to be discontinued. But here again he proceeds with studied caution, requiring, not that the action should be discontinued, but the proceedings in the case on behalf of the United States; which may fairly be construed, in connexion with the clause of remission, which is confined to the claim of the United States, to mean so far forth as the United States are concerned; thus observing a proper correspondence between the right and the remedy. This construction is warranted by the rules of the common law, which lay it down that no pardon shall be carried beyond the express purport of it. 5 Bac. Abr. 291; 6 Coke, 13. Thus, a pardon of three persons of all felonies by them committed, without adding "or either of them," is void. as it supposes them guilty jointly, whereas all felonies are several. 5 Bac. Abr. 293 But this rule must apply, a fortiori, to a case when an interpretation carried beyond the plain expressions of the pardon would interfere with and defeat the rights of third persons, though not then actually consummated.

I am therefore of opinion that the interest of the custom house officers in a moiety of this penalty is not remitted or affected by the pardon of the 25th of April, 1817. And proceeding upon the agreement of the counsel to waive all formal objections, I shall give judgment for the penalty of the bond, to be discharged, by the payment of a moiety of the sum mentioned in the condition to be paid to the collector of the Delaware district, for the benefit of the officers of the customs entitled to the same.

---

UNITED STATES (LANDER v.). See Case No. 8,039.

---

## Case No. 15,558.

### UNITED STATES v. LANDRUM.

[See Case No. 3,393.]

---

## Case No. 15,559.

### UNITED STATES v. LANE.

[3 McLean, 365.] [1]

Circuit Court, D. Indiana. May Term, 1844.

UNITED STATES—CONTRACTS—PROPERTY RECEIVED IN DISCHARGE OF DEBT—AUTHORITY TO PURCHASE LANDS.

1. The government of the United States has power to make a contract, as incident to its sovereignty. It may compromise a suit, and receive real and other property in discharge of the debt in trust, and sell the same.

[Cited in Dikes v. Miller, 25 Tex. Supp. 281.]

2. The solicitor of the treasury is charged with this duty.

3. Such a procedure does not come under any authority to purchase lands.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]